IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

**JOHNATHAN PALMER,**

    **Plaintiff,**

vs.                                            **CIVIL ACTION NO. 5:18-CV-01488**

**NANCY A. BERRYHILL,
ACTING COMMISSIONER OF
SOCIAL SECURITY,**

    **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Acting Commissioner of Social Security denying the Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. By Order entered December 4, 2018 (ECF No. 3), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are Plaintiff's Brief in Support of Complaint and Motion for Remand and Defendant's Brief in Support of Defendant's Decision. (ECF Nos. 14, 15)

Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the United States District Judge **DENY** Plaintiff's request for remand (ECF No. 14), **GRANT** Defendant's request to affirm the decision of the Commissioner (ECF No. 15); **AFFIRM** the final decision of the Commissioner; and **DISMISS** this matter from the docket of the Court for the reasons stated *infra*.

**Procedural History**

The Plaintiff, Johnathan Palmer, (hereinafter referred to as "Claimant"), protectively filed his application for Title II benefits on July 1, 2014, alleging disability since September 15, 2012, because of "sleep apnea, depression, anxiety, insomnia, type 2 diabetes, pol[y]arthralgias, back pain, nerve damage in ankles, bulging disks in neck, and ADHD." (Tr. at 341) His claim was initially denied on October 16, 2014 (Tr. at 279-283) and again upon reconsideration on December 22, 2014. (Tr. at 287-293) Thereafter, Claimant filed a written request for hearing on February 2, 2015. (Tr. at 294-295)

An administrative hearing was held on March 22, 2017 before the Honorable Timothy Wing, Administrative Law Judge ("ALJ"). (Tr. at 206-251) On August 18, 2017, the ALJ entered an unfavorable decision. (Tr. at 11-29) On October 13, 2017, Claimant sought review by the Appeals Council of the ALJ's decision. (Tr. at 317-320) The ALJ's decision became the final decision of the Commissioner on October 11, 2018 when the Appeals Council denied Claimant's Request for Review. (Tr. at 1-7)

On December 3, 2018, Claimant timely brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (ECF No. 2) The Defendant (hereinafter referred to as "Commissioner") filed an Answer and a Transcript of the Administrative Proceedings. (ECF Nos. 9, 10) Subsequently, Claimant filed a Brief in Support of Complaint and Motion for Remand (ECF No. 14), and in response, the Commissioner filed a Brief in Support of Defendant's Decision (ECF No. 15). Consequently, this matter is fully briefed and ready for resolution.

**Claimant's Background**

Claimant was 39 years old as of the alleged onset date and considered a "younger person" throughout the underlying proceedings. See 20 C.F.R. § 404.1563(c). (Tr. at 24, 214) Claimant has a high school education (Tr. at 214) and had previously worked as a mail carrier for the United States Postal Service, as a self-employed sales person, as a carpenter for a construction company, and finally as an owner/operator along with his parents of Palmer's Pro Archery and Sporting Goods store. (Tr. at 241-244)

**Standard**

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520. If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 404.1520(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant

work. Id. § 404.1520(f). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).

The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. Id. § 404.1520(g). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration ("SSA") "must follow a special technique at every level in the administrative review process." Id. § 404.1520a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. § 404.1520a(c). Those sections provide as follows:

> (c) *Rating the degree of functional limitation.* (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in

>    which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
>    (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. See 12.00E of the Listing of Impairments in appendix 1 to this subpart.
>    (4) When we rate your degree of limitation in these areas (understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself), we will use the following five-point scale: None, mild, moderate, marked, and extreme. The last point on the scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. Id. § 404.1520a(d)(1). Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. Id. § 404.1520a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the claimant's residual functional capacity. Id. § 404.1520a(d)(3). The Regulations further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

>    At the administrative law judge hearing and the Appeals Council levels, the written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision

> must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

Id. § 404.1520a(e)(4).

## Summary of ALJ's Decision

In this particular case, the ALJ determined that Claimant last met the requirements for insured worker status on September 30, 2012, his date last insured ("DLI"). (Tr. at 16, Finding No. 1) Next, the ALJ determined that Claimant had not engaged in substantial gainful activity since the alleged onset date of September 15, 2012 through his DLI. (Id., Finding No. 2)

At the second inquiry, the ALJ found that through his CLI, Claimant had the following severe impairments: obstructive sleep apnea; type 2 diabetes mellitus; obesity; and a depression/anxiety disorder. (Tr. at 17, Finding No. 3) At the third inquiry, the ALJ concluded that through his DLI, Claimant's impairments did not meet or equal the level of severity of any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id., Finding No. 4) The ALJ then found that through his DLI, Claimant

> had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following non-exertional limitations: the claimant must avoid occupations that require climbing on ladders, ropes, and scaffolds or frequent exposure to dangerous machinery and unprotected heights. In addition, the claimant can perform no more than simple, routine, repetitive tasks that are not performed in a fast paced production environment. He can also be involved only in simple work related decisions with, in general, relatively few work place changes[.]

(Tr. at 20, Finding No. 5)

At step four, the ALJ found that through his DLI, Claimant was capable of performing his past relevant work as a sales representative. (Tr. at 23, Finding No. 6) The ALJ then made alternative findings for the step five analysis and determined that through his DLI, Claimant's age, education, work experience, RFC and the immateriality of the transferability of job skills, Claimant

was capable of other work that included such occupations as cleaner, hand packager, and production helper. (Tr. at 24-25) Finally, the ALJ determined Claimant had not been under a disability from September 15, 2012 through September 30, 2012, his DLI. (Tr. at 25, Finding No. 7)

**<u>Claimant's Challenges to the Commissioner's Decision</u>**

In support of his appeal, Claimant argues that the ALJ's RFC assessment conflicts with the jobs identified at the fifth step that Claimant can supposedly still perform. (ECF No. 14 at 3) For instance, the production helper job (Dictionary of Occupational Titles ("DOT") 529.686-070) involves feeding machine hoppers with ingredients, ostensibly conflicts with the ALJ's finding that Claimant must avoid dangerous machinery – neither the ALJ nor the vocational expert distinguished whether the machinery was dangerous or not. (Id.) The hand packager job (DOT 920.587-018) involves activities that go beyond Claimant's RFC limitation to performing only simple, routine, repetitive tasks not performed in a fast-paced production environment. (Id. at 3-4) The cleaner job would entail work in a work environment that requires many changes, especially if it was located in a building with a lot of square footage, which also conflicts with Claimant's RFC limitation to having not a lot of workplace changes. (Id. at 4) Lastly, the ALJ erred in finding Claimant could perform his past relevant work as a sales representative or clerk, because these jobs involve being in unfamiliar and changing environments and are not routine; it must be noted that when Claimant worked as a sales clerk, he was self-employed. (Id. at 4-5)

Finally, Claimant contends that his mental impairments, depression and anxiety, are more severe that the ALJ gave credit for and refers to the medical record contained in Exhibits 10F and

8F.[1] (Id. at 5) Claimant states that the ALJ failed to establish Claimant's age and education in the decision. (Id.) In sum, Claimant asks this Court to remand the final decision. (Id.)

In response, the Commissioner emphasizes that Claimant's relevant period of alleged disability is sixteen (16) days, from the alleged onset date of September 15, 2012 through DLI of September 30, 2012, and that there is no medical evidence during this period to support his claim. (ECF No. 15 at 1) The Commissioner states that though Claimant does not challenge the ALJ's RFC assessment, his dispute with the vocational expert's testimony identifying the jobs he could perform, including his past relevant work, as conflicting with the RFC assessment lacks merit. (Id. at 7) The Commissioner explains that the DOT job descriptions are the maximum requirements of occupations but not the range of requirements and a DOT occupation is not precluded simply because a limitation precludes some of the listed tasks.[2] (Id. at 7-8) Further, the Commissioner points out that pursuant to SSR 00-4p, a vocational expert's testimony about particular job requirements is considered proper evidence upon which an ALJ may reasonably rely. (Id. at 8)

Additionally, the production helper job as described by the DOT specifically provides that moving mechanical parts, electric shock and other environmental hazards are not present and therefore Claimant's contention that a machine hopper is dangerous machinery fails. (Id. at 9) Similarly, Claimant fails to establish that the hand packager position conflicts with the RFC limitation and only speculates that the cleaner position as well as his past relevant work requires work place changes beyond his RFC.[3] (Id. at 9-10)

---

[1] After a review of the Exhibits in the record as well as Claimant's representative's opening statement at the administrative hearing (Tr. at 212), it appears to the undersigned that Claimant intended to refer to Exhibit 18F, which concerns Claimant's mental health treatment.
[2] Graves v. Colvin, 2015 WL 5167240, at *5 (M.D.N.C. Sept. 3, 2015); Adkins v. Astrue, 2009 WL 899425, at *11 (S.D.W.Va. Mar. 30, 2009).
[3] Hagans v. Colvin, 2013 WL 5424604, at *11 (E.D.N.C. Sept. 26, 2013).

Finally, the Commissioner asserts that the vocational expert's testimony was consistent with the jobs identified from the DOT, and there were no apparent conflicts necessitating the ALJ's resolution. (Id. at 10) In sum, the Commissioner contends that the final decision is supported by substantial evidence and asks this Court to affirm. (Id. at 12)

**The Relevant Evidence of Record**[4]

The undersigned has considered all evidence of record pertaining to Claimant's arguments and discusses it below.

Mental Health Treatment Records:[5]

Medical records from WVVA HealthCare Alliance indicate that Claimant sought treatment for depression and anxiety in December 2009. (Tr. at 865-869) Treatment notes dated July 20, 2012 indicated that Claimant reported that he hurt "all over", he denied anxiety and depression. (Tr. at 879, 881) Treatment notes dated October 24, 2012 show that Claimant reported that he experienced "no anxiety" and "no depression." (Tr. at 876, 911) His primary care physician noted Claimant's "mood was not depressed and was not anxious[] [t]he affect was normal and the rate of thought was not slowed." (Tr. at 878, 913)

An undated letter from Claimant's treating psychiatrist, Noel Jewell, M.D., and therapist, Patti McMahan, M.A., indicated that Claimant began mental health treatment on June 27, 2014

---

[4] The undersigned focuses on the relevant evidence of record pertaining to the issues on appeal as referenced by the parties in their respective pleadings. As Claimant has only referred this Court to examine his mental impairments and challenged that they are "more severe" than the ALJ noted (ECF No. 14 at 6), the undersigned therefore focuses on the medical records pertaining to same.

[5] As noted by the Commissioner, the record shows that none of these records concern the relevant period of Claimant's alleged disability and postdate the DLI by at least a year and a half to as many as several years. (Tr. at 502-512, 557-559, 610-691) Additionally, the Commissioner's characterization of the medical records from Exhibit 8F is accurate insofar as they pertain to treatment of Claimant's physical impairments, not mental impairments. (ECF No. 15 at 11, n.4) However, Exhibit 18F, as noted *supra*, pertains to Claimant's mental health treatment records.

and had been seen bi-weekly since then.[6] (Tr. at 557) His treating mental health providers opined that Claimant met the criteria for "12.043 Bi-Polar Disorder", causing marked difficulties in activities of daily living and maintaining social functioning, and inability to maintain concentration. (Id.)

Seneca Health Services medical records demonstrate that Claimant was treated from June 2014 through February 2017. (Tr. at 610-691) Once started on a medication regimen for his mental health issues, Claimant frequently reported doing well on his medications with no side effects. (Tr. at 610, 614, 617, 620, 623, 626, 629, 632, 635, 639, 643, 647, 649, 658, 670, 677, 684)

**The Administrative Hearing**

Claimant Testimony:

Claimant testified that he was born on August 9, 1973 and that he graduated high school in 1992. (Tr. at 214-215) Claimant last worked as an owner/operator at Palmer's Pro Archery and Sporting Goods in 2012. (Tr. at 216-217) Claimant testified that his parents also worked with him at the sporting goods store, with no other employees; his duties consisted of stocking shelves, assisting customers, and all other aspects of running the store. (Tr. at 244) Claimant testified that he stopped working on September 15, 2012 because he "just couldn't get along with the public and [his] body couldn't take it." (Tr. at 217) He explained that his chest was hurting and he was vomiting; he went to the hospital for tests on his heart, which confirmed no blockage. (Tr. at 217-218)

Claimant testified that he started treatment for his mental health issues with his family doctor, Dr. Day, in January 2013. (Tr. at 224, 228) Prior to being treated by Dr. Day, he was being

---

[6] This letter is Exhibit 10F that Claimant has referenced; it also contains Dr. Jewell's *curriculum vitae*. (Tr. at 557-559)

seen by Dr. Allen, another family doctor, however, Claimant stopped seeing him because they "had words" about his mental issues and Dr. Allen would not give him his medicine. (Tr. at 228-229) He testified that Dr. Day later referred him to Seneca Health Services for mental health treatment. (Tr. at 225, 226) Claimant confirmed that he began treatment at Seneca in June 2014 and prior to that he did not have formal psychiatric care. (Tr. at 226) He testified his medications did not help his mental health symptoms. (Tr. at 228)

Vocational Expert ("VE") Testimony:

In response to the hypothetical that included the limitations described in the RFC, supra, the VE testified that an individual could perform Claimant's past relevant work as a sales representative as it is generally performed. (Tr. at 247-248) Alternatively, the VE testified that such an individual could perform other jobs, such as a cleaner, packager, and production helper. (Tr. at 248-249) The VE confirmed this testimony was consistent with the DOT. (Tr. at 249)

**Scope of Review**

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence, however, the Court determines if the final decision of the Commissioner is based upon an appropriate application of the law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th

Cir. 1990). Further, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." Blalock, 483 F.2d at 775.

**Analysis**

As an initial matter, to the extent that Claimant contends the ALJ failed to establish Claimant's age and educational level in the written decision (ECF No. 14 at 5), the undersigned **FINDS** this argument lacks merit. The ALJ explicitly noted that Claimant was 39[7] years old as of the DLI, and determined he was a "younger individual" under the Regulations; the ALJ further noted that Claimant had "at least a high school education and is able to communicate in English" (Tr. at 24) which was corroborated by Claimant's testimony. (Tr. at 214)

With regard to Claimant's contention that the ALJ "downplays" his mental impairment (ECF No. 14 at 5), the undersigned **FINDS** this argument also lacks merit. Claimant's argument is akin to a request that this Court reweigh the conflicting evidence or to substitute its judgment for that of the Commissioner, which is impermissible. See, Johnson v. Barnhart, 434 F.3d 650 (4th Cir. 2005). On that premise, as noted *supra*, the ALJ determined Claimant's depression/anxiety disorder was a severe impairment. (Tr. at 17) Significantly, the ALJ recognized that

> With respect to the medical evidence of record, the undersigned notes that the period under adjudication is a period of approximately 15 days between the claimant's alleged onset date and his date last insured. As a result, it does not contain many treatment notes that would conclusively establish the status of the claimant condition during this short timeframe. The undersigned has therefore

---

[7] Earlier in the written decision the ALJ noted Claimant was "fifty-nine years old." (Tr. at 20) Given the ALJ's acknowledgment of the hearing testimony and his later finding Claimant's age and educational level required a finding of "not disabled" pursuant to the Medical-Vocational Rules (Tr. at 24), it is clear the earlier age reference was due to scrivener's error.

> looked at the entirely of the evidence of record in establishing the status of the claimant's severe impairments and the extent of the functional limitations they impose during the period in question.

(Tr. at 21)

Nevertheless, the ALJ examined the medical evidence as it related to this impairment in order to evaluate it under the "special technique" under 20 C.F.R. § 404.1520a. (Tr. at 18-20) Ultimately, the ALJ concluded that based on the medical records, including Claimant's hearing testimony, Claimant had only "mild restrictions" in the functional areas of "understanding, remembering, or applying information", "interacting with others" and "adapting or managing oneself." (Tr. at 18-19) The ALJ determined that the medical evidence and the hearing testimony indicated that Claimant had "moderate limitations" in the functional area of "concentration, persistence or pace." (Tr. at 19) The ALJ supported these findings noting that Claimant's "mental health evaluations generally indicate that he possessed largely normal diagnostic results, with the claimant specifically possessing intact memory, normal thought process and content, and appropriate insight and judgment." (Tr. at 18) Additionally, the ALJ noted that "most of his difficulties he has described in his daily activities appear to results [*sic*] from his alleged physical limitations rather than any mental deficiency (Ex. 4E/1-10; Hearing Testimony)."[8] (Tr. at 21)

It is known that in addition to his burden of showing he has a medically determinable impairment, Claimant must demonstrate "a showing of related functional loss." See Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) (internal citation omitted). Despite Claimant's allegation that the ALJ downplayed the limitations stemming from his mental impairments, the medical evidence support the ALJ's determination that these impairments did not result in any

---

[8] The ALJ referenced Claimant's Function Report, dated August 9, 2014. (Tr. at 352-359)

significant functional deficits. Most importantly, given that the ALJ parsed through a medical record that was not even relevant to the period under adjudication, the ALJ's finding that Claimant's mental impairments caused no greater limitations than those provided for in the RFC assessment included sufficient explanation allowing for meaningful judicial review, therefore, remand is unnecessary. Mascio v. Colvin, 780 F.3d 632, 636-637 (4th Cir. 2015).

DOT Consistency at the Fifth Step of Sequential Evaluation Process:

It is important to recognize that the ALJ, with the assistance of a vocational expert, found that Claimant could perform his past relevant work as a sales representative at step four. (Tr. at 23) Accordingly, Claimant did not establish a *prima facie* case of disability, and because the ALJ made a determination of disability at step four, he was not obligated to analyze subsequent steps. See 20 C.F.R. § 404.1520(a)(4). Nevertheless, the ALJ provided an alternative finding at the final step in the sequential evaluation process, that Claimant could perform work at all exertional levels, with non-exertional limitations. (Tr. at 25)

The ALJ acknowledged the vocational expert's testimony that there were several jobs which Claimant could still perform, and that the testimony was consistent with the DOT. (Id.) Claimant has argued that the ALJ's RFC assessment was inconsistent with the finding that he remained capable of not only performing his past relevant work as a "sales representative", but also the alternative jobs identified by the vocational expert. (ECF No. 14 at 3-5) Ostensibly, Claimant argues that the ALJ did not follow the dictates of Social Security Ruling ("SSR") 00-4p because the DOT descriptions of the identified jobs are not consistent with his RFC insofar as they expose him to dangerous machinery ("production helper"), require an ability to perform tasks beyond his restriction to "simple, routine, repetitive tasks that are not performed in a fast paced

production environment" ("hand packager"), require many workplace changes ("cleaner"; "sales representative"), and work with the general public ("sales representative"). (Id.)

> The Fourth Circuit has held "Although we could guess what these occupations require in reality, it is the purview of the ALJ to elicit an explanation from the expert ..." Pearson v. Colvin, 810 F.3d 204, 211 (4th Cir. 2015). The duty rests with the ALJ, not a reviewing court, to find facts and resolve conflicts. Radford, 734 F.3d at 296; see also Brown v. Colvin, 639 Fed. App'x. 921, 923, 2016 WL 50298, at *2 (4th Cir. Feb. 9, 2016) ("We remand to avoid engaging in fact-finding 'in the first instance' and to allow the ALJ to further develop the record so that we can conduct a meaningful judicial review").

See Cunningham v. Berryhill, No. 3:16-cv-02525, 2017 WL 1259587 (S.D.W. Va. Mar. 31, 2017) (M.J. Tinsley). "When a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT." See, Policy Interpretation Ruling: Titles II And XVI: Use Of Vocational Expert And Vocational Specialist Evidence, And Other Reliable Occupational Information In Disability Decisions, SSR 00-4p, 2000 WL 1898704, at *4. As stated *supra*, it remains the exclusive duty of the ALJ to identify any conflicts in the evidence and to resolve them. Indeed, the burden of proof shifts to the ALJ at the fifth step of the sequential evaluation process, because "[i]n order to support a finding that you are not disabled at this fifth step . . . we are responsible for providing evidence that demonstrates that other work exists . . . that you can do, given your residual functional capacity and vocational factors." See 20 C.F.R. § 404.1560(c)(2).

Returning to the DOT descriptions of the jobs identified by the vocational expert, it is noted the "production helper" job includes working with a machine hopper does not expose Claimant to dangerous machinery. The undersigned agrees with the Commissioner that the DOT provides that moving mechanical parts, electric shock, and other environmental conditions are "not present" in

that position. See DICOT 529.686-070, 1991 WL 674732. Further, the job description for "production helper" does not give rise to an "apparent" conflict with the controlling RFC in this case necessitating the ALJ's resolution.

With regard to the "hand packager" position, the Commissioner correctly notes that the DOT provides the "maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings." SSR 00-4p, 2000 WL 1898704, at *2. (ECF No. 15 at 8) Further, as this Court noted in Adkins v. Astrue, even if Claimant were precluded from performing certain "variations" of the job duties outlined in the DOT (ECF No. 14 at 3), where the vocational expert's testimony remains consistent with the DOT, the ALJ properly relied on same. 2009 WL 899425, at *11 (S.D.W.Va. Mar. 30, 2009)

With regard to the "cleaner" position, Claimant's argument that the job duties are inconsistent with the RFC limitation to "relatively few work place changes" (Tr. at 20) is, as couched by the Commissioner, "pure speculation." (ECF No. 15 at 10) The definition as provided by the DOT provides:

> Keeps premises of office building, apartment house, or other commercial or institutional building in clean and orderly condition: Cleans and polishes lighting fixtures, marble surfaces, and trim, and performs duties described in CLEANER (any industry) I Master Title. May cut and trim grass, and shovel snow, using power equipment or handtools. May deliver messages. May transport small equipment or tools between departments. May setup tables and chairs in auditorium or hall. May be designated according to duties performed as Hall Cleaner (hotel & rest.); Light-Fixture Cleaner (any industry); Marble Cleaner (any industry); Metal Polisher (any industry); Paint Cleaner (any industry); or according to equipment used as Scrubbing-Machine Operator (any industry).

See DICOT 381.687-014, 1991 WL 673257. As discussed *supra*, SSR 00-4p states that this is not a range of the job requirements, but a maximum range of the occupations within this industry. Further, there is nothing that indicates that the "cleaner" position entails greater than "relatively

few work place changes." In short, there is no inconsistency between the ALJ's RFC restrictions and the DOT's maximum list of requirements for this particular job.

Additionally, with respect to Claimant's past relevant work as a "sales representative", the ALJ expressly noted the vocational expert identified that this work was performed by Claimant from October 2011 through September 2012 (Tr. at 23), and as described by Claimant, was performed for himself, and not on behalf of third parties. (ECF No. 14 at 5) To be sure, this work, along with his past relevant work as a "store clerk" and "store owner/operator", was during his self-employment at Palmer's Pro Archery and Sporting Goods. As with the "cleaner" position, there is no evidence that this work required greater than "relatively few work place changes" as performed by Claimant. (Tr. at 23, 24) Finally, despite the fact that the "sales representative" job may require work with the general public, there is no such limitation in Claimant's RFC.

Accordingly, the undersigned **FINDS** the ALJ's determination that the vocational expert's testimony was compliant with the DOT at step four, as well as with the alternative findings at step five, and is supported by substantial evidence.

## Recommendations for Disposition

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **DENY** the Claimant's request for remand (ECF No. 14), **GRANT** the Defendant's request to affirm the decision below (ECF No. 15), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from the docket of this Court.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Irene C. Berger, United States District

Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. <u>Snyder v. Ridenour</u>, 889 F.2d 1363, 1366 (4th Cir. 1989); <u>Thomas v. Arn</u>, 474 U.S. 140, 155 106 S.Ct. 466, 475, 88 L.E.2d 435 (1985), <u>reh'g denied</u>, 474 U.S. 1111, 106 S.Ct. 899, 88 L.E.2d 933 (1986); <u>Wright v. Collins</u>, 766 F.2d 841 846 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91, 94 (4th Cir.), <u>cert. denied</u>, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.E.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Berger, and this Magistrate Judge.

The Clerk of this Court is directed to file this Proposed Findings and Recommendation and to send a copy of same to counsel of record.

ENTER: May 8, 2019.

_____
Omar J. Aboulhosn
United States Magistrate Judge